IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 24-30012 |
| | ) |
| JOSE BERNABE-LERMA, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

**SUE E. MYERSCOUGH, U.S. District Judge:**

This matter comes before the Court on the Report and Recommendation of U.S. Magistrate Judge Eric Long (d/e 45) on Defendant Jose Bernabe-Lerma's Motion to Suppress (d/e 32). Defendant timely filed a Memorandum of Law in Support of Rejecting the Magistrate's Report and Recommendation and Granting Suppression (d/e 49).

The Court has thoroughly reviewed Magistrate Judge Long's Report and Recommendation and Defendant's objections to the Report and Recommendation. For the reasons set forth below, the Court OVERRULES Defendant's objections (d/e 49), ACCEPTS and

ADOPTS Magistrate Judge Long's Report and Recommendation (d/e 45), and DENIES Defendant's Motion to Suppress (d/e 32).

## I. BACKGROUND

On February 29, 2024, a one-count Criminal Complaint was filed in this Court alleging that on or about February 27, 2024, in Logan County, in the Central District of Illinois, Defendant violated 21 United States Code Section 841, Possession with Intent to Distribute Cocaine. See d/e 1.

Later that day, Defendant was arrested pursuant to a federal warrant, appeared before U.S. Magistrate Judge Karen L. McNaught for his Initial Appearance on the Criminal Complaint, and was remanded to the custody of the U.S. Marshal. See d/e 3, d/e 5, d/e 6, d/e 7. On March 3, 2024, Defendant appeared for his Detention Hearing before Judge McNaught, who ordered him released on a $10,000 Own Recognizance Bond. See March 3, 2024 Minute Entry.

On March 19, 2024, a one-count Indictment was filed in this Court alleging that on or about February 27, 2024, in Logan County, in the Central District of Illinois, Defendant knowingly and intentionally possessed with intent to distribute 5 kilograms or

more of a substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(l) and (b)(l)(A). See d/e 13. On April 3, 2024, Defendant appeared before Judge McNaught for his Arraignment and entered a plea of not guilty. See d/e 19.

On October 24, 2024, Defendant filed a Motion to Suppress Evidence Found as a Result of an Unreasonably Prolonged Traffic Stop (d/e 32). On January 24, 2025, the Government filed its Response (d/e 37). On June 26, 2025, the parties appeared before U.S. Magistrate Judge Eric Long for an Evidentiary Hearing regarding Defendant's Motion to Suppress. See June 26, 2025 Minute Entry.

On July 10, 2025, Magistrate Judge Long issued a Report and Recommendation recommending that Defendant's motion to suppress evidence be denied. See d/e 45. On September 12, 2025, Defendant filed a Memorandum of Law in Support of Rejecting the Magistrate's Report and Recommendation and Granting Suppression (d/e 45). On September 12, 2025, the Government filed its Response (d/e 53).

## II. ANALYSIS

A district judge reviews de novo those portions of the Report and Recommendation to which timely objections have been made. See Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1). The district judge may "accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate with instructions." Fed. R. Crim. P. 59(b)(3). If only some portions of the Report and Recommendation are objected to, the district judge reviews those unobjected portions for clear error. Johnson v. Zema Sys. Corp., 170 F.3d 734, 739 (7th Cir. 1999).

Having reviewed the hearing transcript, the Report and Recommendation, the parties' motions and memoranda, and the applicable law, the Court finds no clear error in the unobjected portions of Magistrate Judge Long's Report and Recommendation. The Court reviews the objected portions de novo below.

### A. The Duration of Defendant's Stop Was Not Categorically Unreasonable.

Defendant first "objects to the Magistrate's determination that the stop was only prolonged 10 minutes" and failure to "consider the total time of the stop in its totality." d/e 49, pp. 2-3. Defendant

cites in support <u>Rodriguez v. United States</u>, 575 U.S. 348, (2015), in which law enforcement pulled the defendant's vehicle over for a traffic violation at 12:06 a.m. and completed the written warning for the traffic stop by 12:27 or 12:28 a.m.—a total of 21 or 22 minutes, at which point law enforcement initiated a drug dog sniff around the vehicle that alerted seven or eight minutes from the issuance of the written warning. <u>Id.</u> at 351-52.

The Magistrate Judge in <u>Rodriguez</u> "found that no reasonable suspicion supported the detention once [law enforcement] issued the written warning" but that "under Eighth Circuit precedent, extension of the stop by 'seven to eight minutes' for the dog sniff was only a <u>de minimis</u> intrusion on Rodriguez's Fourth Amendment rights and was therefore permissible." <u>Id.</u> at 352 (emphasis in original). The Supreme Court disagreed, finding "that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." <u>Id.</u> at 350.

However, the justices explicitly noted that neither they nor the appellate court reviewed the Magistrate Judge's finding "that

detention for the dog sniff in this case was not independently supported by individualized suspicion," such that "[t]he question whether reasonable suspicion of criminal activity justified detaining Rodriguez beyond completion of the traffic infraction investigation" remained open for the appellate court to consider on remand. Id. at 357-58. Therefore, the Supreme Court appropriately assumed a lack of reasonable suspicion supporting detention after law enforcement issued the written warning in its ruling in Rodriguez. Conversely, whether reasonable suspicion existed supporting Defendant's detention after law enforcement issued the written warning in this case is the central issue—rendering Rodriguez clearly distinguishable.

Defendant argues that he was detained for over 20 minutes total, citing not just the ten-minute time frame between being told he was free to go and the dog sniff but that "the K9 was sought only after he was discharged with a ticket— approximately 16 minutes after the initial contact," such that "the length of [Defendant]'s stop itself is questionable." d/e 49, pp. 2-3.

But the Seventh Circuit "'repeatedly ha[s] declined to adopt even a rule of thumb' as to how long a reasonable stop may last." United States v. Devalois, 128 F.4th 894, 899 (7th Cir. 2025), cert. denied, No. 24-7219, 2025 WL 1679038 (U.S. June 16, 2025) (quoting United States v. Gholston, 1 F.4th 492, 497 (7th Cir. 2021)). Therefore, the fact that Defendant's stop lasted over 20 minutes, even if longer than the stop in Rodriguez, does not render Defendant's stop categorically unlawful.

Defendant also argues that a delay "attributable to Trooper Eilers'...conducting a roadside interrogation in an effort to develop the legal justification to prolong the stop" contributed to the stop's "questionable" length. d/e 49, pp. 3-4. Defendant argues that while law enforcement was investigating the traffic offense of following too closely, Trooper "Eilers' questioning was not reasonably related to the offense of following too closely." Id.

However, the Seventh Circuit found in Devalois that a law enforcement officer requesting a driver's license, rental agreement, and registration card; running a license status check and vehicle search in the Illinois fleet system; and asking questions about travel

plans "fell within the stop's mission" of "issuing a warning for following too closely behind a semi-truck." Devalois, 128 F.4th at 899-900. Further, the Seventh Circuit found that the law enforcement officer then asking the driver relevant follow up questions about potential drugs or other contraband in the car "did not convert the encounter into something other than a lawful seizure because [the officer] was still actively preparing the warning ticket." Id. (internal citations omitted) (citing Arizona v. Johnson, 555 U.S. 323, 333 (2009)).

> Here, by Defendant's own account,
>
> [Trooper] Eilers interrogated [Defendant] in his squad car about his travel plans contemporaneous with drafting his written warnings. After about 14 minutes of questioning, [Trooper] Eilers indicated to [Defendant] he was free to leave. After [Defendant] stepped out of his vehicle, he is asked if he consented to a search. [Defendant] declined.

d/e 49, p. 4. The questioning that Defendant contests as "not reasonably related to the offense of following too closely"—prior to Trooper Eilers asking for consent to search, for which Defendant separately contests that there was reasonable suspicion—occurred while Trooper Eilers drafted the warning. Id. Therefore, Defendant cites to law enforcement asking him questions that "fell within the

stop's mission" of "issuing a warning for following too closely behind" another vehicle. Devalois, 128 F.4th at 899-900. The only other law enforcement questioning Defendant cites constituted relevant follow up questions about potential drugs or other contraband in the car such that they "did not convert the encounter into something other than a lawful seizure because [the officer] was still actively preparing the warning ticket." Id.

In sum, this Court finds no clear error in Magistrate Judge Long's determination that "[t]here is nothing improper about [Trooper Eilers'] line of questioning" as to Defendant's travel plans. d/e 45, p. 18.

### B. Law Enforcement Extending the Defendant's Stop With a Drug Dog Sniff Was Supported by Reasonable Suspicion.

Defendant then objects to Magistrate Judge Long's finding that Trooper Eilers had reasonable and articulable suspicion to prolong the stop for three main reasons. See d/e 49, p. 5. First, Defendant alleges that "the officer claimed similar justifications and took a similar amount of the time from the inception of the stop to the deployment of K9" as in United States v. Rodriguez-Escalera, 884

F.3d 661, 664 (7th Cir. 2018), which resulted in suppression of the evidence from the contested search. See d/e 49, p. 5.

In Rodriguez-Escalera, a law enforcement officer, Patterson, pulled over a car on the interstate for abruptly switching lanes in front of a truck without signaling and then questioned the driver, Moran, and the passenger, Rodriguez. Id. at 663-64. Patterson had all of the information necessary to issue the traffic citations and send the driver and passenger along about eleven minutes from the start of the traffic stop. Id. at 664. "But Patterson had grown suspicious of the couple's travel plans and decided to have a narcotics-detection dog sniff Moran's vehicle." Id. Patterson identified four factors that triggered his suspicion during the traffic stop: the strong smell and number of air fresheners, the couple's origin city of Los Angeles known to be a "major narcotics distribution center," Moran seeming nervous when Patterson questioned her in his squad car and Rodriguez "not initially look[ing] up at Patterson and instead seem[ing] to be distracted by a video game on his phone," and the couple's conflicting travel plans. Id. at 666.

The district court saw differently, finding the air fresheners not excessive, Moran and Rodriguez calm and responsive, respectively, and the conflict in travel accounts diminished by Moran's explanation—such that the officer lacked reasonable suspicion. Id. at 669. The Seventh Circuit Court of Appeals found no clear error in this reasoning. Id. at 672.

Here, Magistrate Judge Long considered several alleged factors about Defendant: his extreme nervousness, his illogical travel plans, his passenger, his rental vehicle containing an air freshener and a radar detector, his source of income and employment, and his personal property in the rental car consisting of luggage and bags. See d/e 45, pp. 12-16. These constitute a greater number of factors and generally different circumstances from which to determine reasonable suspicion than that of the couple in Rodriguez-Escalera.

Considering the factors present both here and in Rodriguez-Escalera, Defendant had only one air freshener—fewer than the three or four air fresheners found not excessive in Rodriguez-Escalera—and Defendant argues that he did not exhibit signs of

extreme nervousness, akin to Moran and Rodriguez being calm and responsive in Rodriguez-Escalera. See d/e 45, pp. 2, 9; see also Rodriguez-Escalera, 884 F.3d at 669. But even assuming that the additional factors considered here and not in Rodriguez-Escalera did not contribute to finding reasonable suspicion, the Court finds that this case lacks a critical factor present in Rodriguez-Escalera—an explanation diminishing Defendant's travel account.

Here, Defendant offered no evidence of hotel accommodations, the wedding venue, or packed dress clothes. Id. at pp. 20-21. Unlike Moran explaining Rodriguez's unawareness of their New York City destination as a surprise destination on the couple's trip in Rodriguez-Escalera, see 884 F.3d at 665, Defendant, here, was traveling to a family wedding with a non-family passenger who did not know the cousin getting married. Id. at 20-22. Neither Defendant nor the passenger offered any explanation for any of these confusing answers. Therefore, the Court distinguishes the case at bar from Rodriguez-Escalera and finds no clear error in Magistrate Judge Long's determination that Defendant's "explanation for his travel [] was riddled with objective

discrepancies or—at best—was confusing to Trooper Eilers" in considering the totality of the stop's circumstances. d/e 45, p. 20.

Next, Defendant argues that Magistrate Judge Long deferring to Trooper Eilers' testimony that Defendant appeared nervous was "unwarranted" when Magistrate Judge Long also "found [that Defendant] did not appear nervous" and that Trooper "Eilers' testimony was contradicted by the video on <u>numerous</u> occasions." d/e 49, p. 6 (emphasis in original). The Government counters in its Response that Magistrate Judge Long "ultimately found Trooper Eilers' testimony on the issue of nervousness credible." d/e 53, p. 5.

Both parties mischaracterize Magistrate Judge Long's findings. Magistrate Judge Long found that Defendant's purported extreme nervousness was "difficult to assess from the video footage" and that the video footage was "inconclusive" as to Defendant's purported extreme nervousness and rendered the court "unable to corroborate or discredit" the nervousness allegations in Trooper Eilers' testimony and ISP report. d/e 45, pp. 12-13.

As to Trooper Eilers' claims that Defendant demonstrated nervousness with a rapidly pulsing carotid artery, shaking hands,

and heavy belly breathing, Magistrate Judge Long "was unable to identify any indication" of Defendant's hands shaking in the video footage and found that the video footage lacking "a clear image of Defendant's torso…weighed neutrally" on the heavy belly breathing point. d/e 45, pp. 13-14. Magistrate Judge Long noted that that "there is nothing in the videos to prove or disprove [the] assertion" that Defendant's carotid artery pulsed, but also "nothing in the videos to discredit" Trooper Eilers, who was seated close to and directly left of Defendant, "testif[ying] that he could see [Defendant's] artery pulsing from his vantage point." Id. at p. 14.

Upon independent review of the video footage, the Court concurs with Magistrate Judge Long and finds the video "inconclusive" as to Defendant's purported extreme nervousness—which, as Magistrate Judge Long noted, was "just one of the factors upon which Trooper Eilers relied to justify his reasonable suspicion." Id. at p. 15.

Finally, Defendant argues that neither the fact that Defendant "was going to a wedding but didn't have dress clothes hanging up" nor the fact "that [Defendant's] rental agreement was expired …

independently or taken together satisfied a reasonable and articulable suspicion that justified prolonging the stop <u>an additional</u> 10 or more minutes to wait for a K9 unit." d/e 49, p. 6 (emphasis in original).

Defendant acknowledges, however, that Magistrate Judge Long considered not only Defendant's lack of appropriate clothes and expired rental agreement, but also several other factors including Defendant's "illogic[al] travel plans," "rental vehicle" containing an air freshener and a radar detector, and "source of income" and employment. <u>Id.</u> at p. 5; <u>see also</u> d/e 45 pp. 18-21, 22-24. Therefore, Defendant's contention that those two facts alone did not support a finding of reasonable suspicion does not apply to Magistrate Judge Long's finding of reasonable suspicion that considered more than those two facts alone.

## IV. CONCLUSION

In sum, Defendant's objections do not raise convincing reasons for this Court to reject Magistrate Judge Long's Report and Recommendation (d/e 45). It is, therefore, ORDERED:

(1) The Report and Recommendation of U.S. Magistrate Judge Long (d/e 45) is ACCEPTED and ADOPTED.

(2) Defendant's Objections to the Magistrate Judge's Report and Recommendation (d/e 49) are OVERRULED.

(3) Defendant Jose Bernabe Lerma's Motion to Suppress (d/e 32) is DENIED as to the evidence found as a result of the Defendant's traffic stop.

**IT IS SO ORDERED.**
**ENTERED: October 10, 2025.**
**FOR THE COURT**

/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**